UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

CHRISTOPHER BODIN AND                    CIVIL ACTION
KYLAN BODIN

VERSUS                                   NO.  07-3505

JAMES C. BUTLER AND                      SECTION "R" (4)
JOCELYN BUTLER

### ORDER AND REASONS

Before the Court is defendants' motion for summary judgment
to limit damages in this matter to the amount set forth in the
Breach of Agreement by Purchaser" provision in the Agreement to
Purchase or Sell.  For the following reasons, the Court GRANTS
the motion.


**I.    BACKGROUND**

This case arises out of a contract dispute between
plaintiffs, Christopher and Kylan Bodin, and defendants, James
and Jocelyn Butler.  Plaintiffs owned two parcels of real
property in Covington, La.  A house was located on the first lot,
at 318 Twin River Drive.  The second lot (Lot 10) was vacant and
used as a yard.  In October 2005, the Bodins listed the Twin
River lot and Lot 10 for sale, with asking prices of $1,175,000
and $145,000 respectively.  On or about May 12, 2006, the
Butlers, through their real estate agent, submitted an Agreement

to Purchase or Sell, which offered to purchase the Twin River lot for $915,000.  The Bodins rejected the offer on May 14, 2006 and counter-offered to sell the lot for $1,070,000.  The Butlers rejected the counteroffer and on May 22, 2006 submitted another Agreement to Purchase or Sell, offering $965,000.  The Bodins agreed to accept the terms of the May 22, 2006 Agreement to Purchase or Sell ("Agreement") if the purchase price was $980,000, and the Butlers accepted this price.  The Agreement became final on May 23, 2006.  The Butlers tendered a personal check for $5,000 as a deposit.

In accordance with the agreement, the Butlers hired an inspection service, and the service inspected the property on June 1, 2006.  They submitted the results of the inspection to the Bodins, and the Bodins repaired the items the Butlers requested them to fix.  While the repairs were taking place, the Butlers began the process of obtaining financing for the lot. Before they obtained financing, however, the Butlers decided that they did not wish to purchase the lot.  The parties dispute when the Butlers notified the Bodins of their decision.  The Bodins allege that they did not hear anything from the Butlers, while the Butlers assert that they promptly notified the Bodins of their decision.  Regardless, on June 30, 2006, the Bodins arrived at the office of Mahoney Title to execute the sale.  The Butlers

2

did not attend, but their real estate agent did.  The Bodins undertook a *proces verbal* to memorialize the proceedings.

The Bodins eventually sold the property, on February 16, 2007, for $900,0000, which was $80,000 less than the price the Butlers agreed to pay.  On June 27, 2007, the Bodins sued the Butlers for breach of the Agreement.  Defendants now move for summary judgment to limit their liability for damages to the amount stipulated in the provision of the Agreement entitled Breach of Agreement by Purchaser.

## II.   LEGAL STANDARD

### A.   Applying Louisiana Law

Because jurisdiction is based on diversity, Louisiana law applies to the substantive issues before the Court. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938).  In Louisiana, the sources of law are legislation and custom. *Shaw Constructors v. ICF Kaiser Eng'rs, Inc.*, 395 F.3d 533, 546 (5th Cir. 2004).  These authoritative or primary sources of law are to be "contrasted with persuasive or secondary sources of law, such as [Louisiana and other civil law] jurisprudence, doctrine, conventional usages, and equity, that may guide the court in reaching a decision in the absence of legislation and custom." *Id*. (quoting La. Civ. Code art. 1).  In Louisiana, "courts must begin every legal analysis by examining primary sources of law:

the State's Constitution, codes, and statutes." *Id.* (quoting *Prytania Park Hotel, Ltd. v. Gen. Star Indem. Co.*, 179 F.3d 169, 174 (5th Cir. 1999)).  To make an "*Erie* guess" on an issue of Louisiana law, the Court must "employ the appropriate Louisiana methodology" to decide the issue the way that it believes the Supreme Court of Louisiana would decide it. *Id.* (quoting *Lake Charles Diesel, Inc. v. Gen. Motors Corp.*, 328 F.3d 192, 197 (5th Cir. 2003)).

**B.   Summary Judgment**

Summary judgment is appropriate when there are no genuine issues as to any material facts, and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986).  A court must be satisfied that no reasonable trier of fact could find for the nonmoving party or, in other words, "that the evidence favoring the nonmoving party is insufficient to enable a reasonable jury to return a verdict in her favor." *Lavespere v. Niagara Mach. & Tool Works, Inc.,* 910 F.2d 167, 178 (5th Cir.1990) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986)).  The moving party bears the burden of establishing that there are no genuine issues of material fact.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in

the record contains insufficient proof concerning an essential element of the nonmoving party's claim. *See Celotex,* 477 U.S. at 325; *Lavespere,* 910 F.2d at 178.  The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See Celotex,* 477 U.S. at 324.  The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue exists for trial. *See id.* at 325; *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994)

## III. DISCUSSION

### A.   Stipulated Damages

Plaintiffs allege that defendants breached a provision of the Agreement entitled "Financing."  The provision provides:

> PURCHASER'S failure to apply for said loan(s), to reasonably produce all documents required by Lender and diligently pursue loan approval or to have the stated down-payment shall not void this agreement, but be considered in breach hereof.

(R. Doc. 14-2 at 1).  At issue here is whether the damages the plaintiffs incurred when defendants allegedly breached the Agreement are limited to the amount specified in the contract provision entitled "Breach of Agreement by Purchaser."  The provision provides:

> In the event the PURCHASER fails to comply with this agreement within the time specified, SELLER shall have the right to demand specific performances or, at

> SELLER's option, SELLER shall have the right to
> reoffer the property for sale and may declare the
> deposit, ipso facto, forfeited, without formality
> beyond tender of title to PURCHASER.  In either event,
> SELLER shall have the right to recover any costs
> and/or fees, including expenses and reasonable
> attorney's fees, incurred as a result of this
> agreement and breach thereof.

(R. Doc. 14-2 at 2).  The Butlers argue that since the purchase
agreement provides two alternatives in the event of breach — the
purchaser's forfeiture of the deposit or specific performance —
the Bodins cannot obtain relief other than as provided in the
stipulations.  The Bodins claim that since the deposit was not
earnest money, they can recover more than the deposit.

Under Louisiana law, "[w]hen the words of a contract are
clear and explicit and lead to no absurd consequences, no further
interpretation may be made in search of the parties' intent."
La. Civ. Code art. 2046.  Parties may stipulate the damages to be
recovered in the event of "nonperformance, defective performance,
or delay in performance of an obligation."  La. Civ. Code art.
2005.  A stipulated damage clause fixes the amount of damages
that can be recovered, and a court may not award actual damages.
*Grimsley v.* Lenox, 643 So.2d 203, 206 (La. Ct. App. 1994).  A
court may not modify the stipulated damages in a contract unless
the damages are so "manifestly unreasonable" as to be contrary to
public policy.  La. Civ. Code art. 2012.

Here, the words of the Agreement are clear.  If the

purchaser breaches, the seller can either demand specific performance or put the property back on the market and declare the deposit forfeited.  With either choice, the seller can also recover costs and/or fees, including expenses and reasonable attorney's fees.  Since the Bodins chose not to demand specific performance but to sell the property to someone else, they are entitled to keep the deposit and recover costs and/or fees.

Plaintiffs mistakenly contend that since the Butlers' deposit was not "earnest money" under Louisiana law, they can recover the actual damages they incurred because of the breach. Under Louisiana law, when parties to a contract to sell stipulate that a sum given by the buyer to the seller is earnest money, either party may recede from the contract.  If the buyer recedes, she forfeits the earnest money; if the seller recedes, he must return the earnest money plus an equal amount.  La. Civ. Code art. 2624.  A deposit, in contrast, is defined simply as a sum given by the buyer to the seller in connection with a contract for sale. *Id.*  As plaintiffs point out, article 2624 abandons the earlier presumption that unless stipulated otherwise, any money a buyer gives to a seller in contemplation of purchase is earnest money. *See* Revision Comments, 1993, La. Civ. Code art. 2624. Indeed, the $5,000 deposit the Butlers tendered to the Bodins is not earnest money since the Agreement also provides for a right of specific performance in the event of default, thus not

7

allowing the purchaser to recede merely by forfeiting the
deposit. *See Mason v. Coen*, 449 So.2d 1195, 1199 (La. Ct. App.
1984).  But even so, the plaintiffs cannot recover in excess of
the deposit, plus costs and attorney's fees, when the Agreement
explicitly provides that the two remedies for a purchaser's
breach are specific performance or purchaser's forfeiture of the
deposit, plus payment of costs and attorney's fees. *See
Riverfront Investors Group v. Chavez*, 644 So.2d 247, 250 (La. Ct.
App. 1994) (finding that even though statute governing earnest
money did not apply, liquidated damages provision of agreement
limited purchaser's liability to deposit amount). *Grimsley v.
Lenox* is particularly analogous.  There, the relevant provision
stated:

> In the event purchaser fails to perform every condition
> of this contract within the time specified, [they]
> waive any right to the deposit, and forfeit same as
> liquidated damages without formal demand, or the seller
> may demand specific performance.

643 So.2d 203, 204 (La. Ct. App. 1994).  The agreement also
stipulated that the non-breaching party could recover attorney's
fees.  The court reversed the trial court's finding that the
seller could recover actual damages from the purchaser's breach
and found that this provision, although not earnest money,
limited the seller's recovery to the amount of the deposit or
specific performance. *Id.* at 206.  Similarly, the agreement here
expressly provides that if the purchaser fails to perform, the

8

seller can either demand specific performance or keep the purchaser's deposit.  Thus, even though the $5,000 was not earnest money, the provision of the Agreement in question limits the seller's recovery to $5,000, plus costs and/or fees.

### B.  Bad faith

Plaintiffs also contend that summary judgment is not appropriate since there is a genuine issue of material fact as to whether defendants acted in bad faith, and thus whether they are entitled to recover more than the stipulated damages.  Under Louisiana law, an obligor who breaches a contract in good faith is liable for damages that were foreseeable at the time the contract was made.  La. Civ. Code art. 1996.  An obligor who breaches a contract in bad faith is liable for all damages, foreseeable or not, that are a result of his failure to perform.  La. Civ. Code art. 1997.  Bad faith generally implies "actual or constructive fraud or a refusal to fulfill contractual obligations, not an honest mistake as to actual rights or duties."  *Dorsett v. Johnson*, 786 So.2d 897, 900-01 (La. Ct. App. 2001) (internal citations omitted).  The obligor must have "intentionally and maliciously" failed to perform his obligation.  *Id.* at 901.  Bad faith means more than "mere bad judgment or negligence" — it implies a conscious doing of wrong for dishonest or morally questionable reasons.  *Bond v. Broadway*, 607 So.2d 865, 867 (La. Ct. App. 1992).

9

The Court finds that the evidence submitted does not show that the Butlers' actions rise to the level of bad faith that makes an obligor liable for all damages, foreseeable or not. *Cf. Hollenbach v. Holden*, 728 So.2d 544, 549-50 (La. Ct. App. 1999) (finding contractor was in bad faith when, after an oil spill, contractor abandoned the contract to remove oil tanks and did not take steps to contain the spill or inform the plaintiffs of the leak); *Kite v. Gus Kaplan, Inc.*, 708 So.2d 473, 482 (La. Ct. App. 1998), *aff'd in part, reversed in part on other grounds* 747 So.2d 503 (La. 1999) (finding that landlord's forcible eviction of tenant, in breach of their lease, without warning and in a callous manner with no regard to tenant's property constitutes bad faith). The Bodins argue that the Butlers' "arbitrary and capricious" refusal to go through with the sale was in bad faith. The Bodins have provided no evidence of the Butlers' bad faith other than the bare fact that they refused to go through with the Agreement. Without evidence that the Butlers' default was malicious or fraudulent in some manner, the Bodins cannot survive summary judgment as to bad faith based on the Butlers' mere refusal to perform. Further, the Agreement contemplated the situation in which the purchaser could fail to follow through with the contract. The purchaser's failure to diligently pursue loan approval or present the down-payment would be a breach of the Agreement, (R. Doc. 14-2 at 1), and the parties specified

the remedy therefor. (R. Doc. 14-2 at 2).  If the Court were to
hold that by not seeking financing or putting up a down-payment,
the party also violated the bad faith provision in the Civil
Code, any breach of this common contractual provision would allow
the seller to recover unforeseeable damages.  The Court finds
that article 1997 should not be construed so broadly as to
include such intentional, but not malicious, conduct.  As such,
without evidence of malice or morally questionable motivation, a
purchaser's failure to diligently pursue loan approval or produce
a down-payment does not constitute the bad faith requisite to
allow the seller to recover all damages, including those that are
unforeseeable.

     While there is some uncertainty, most Louisiana
jurisprudence suggests that even if the Butlers' decision not to
purchase the Twin River Lot was in bad faith, the Bodins'
recoverable damages are still limited to those stipulated in the
Agreement.  *But see* 6 Saul Litvinoff, Louisiana Civil Law
Treatise, § 13.22.  Louisiana courts have held that when damages
are stipulated, recovery is limited to those damages, regardless
of bad faith.  *See Pierre v. Chevalier*, 233 So.2d 61, 66 (La. Ct.
App. 1970).  For instance, in *Grimsley*, the Louisiana Third
Circuit Court of Appeal found that despite the purchaser's bad
faith in failing to attempt to obtain financing, the seller's
only remedy was to keep the $500 deposit, since the agreement

stipulated the forfeiture as the remedy for breach. 643 So.2d at 206.  In *Pierre*, the state court considered a penalty clause similar to the one in this case.  The clause provided:

> In the event the purchaser fails to comply with this agreement within the time specified, the seller shall have the right to declare the deposit, ipso facto, forfeited, without formality beyond tender of title to purchaser; or the seller may demand specific performance.

233 So.2d at 63.  The court rejected "the concept of arbitrariness, bad faith or fault as factors to be considered in the application of the penal clause." *Id.* at 66.  If the party was in default, the penal clause applied.  *Id.*  The same is true here.  The Butlers determined that they did not wish to purchase the property, and therefore they are in default.  As such, the stipulated damage provision applies.

Two Louisiana Supreme Court cases emphasize the enforceability of liquidated damages provisions as the exclusive remedy for breaches of contract.  In *Heirs of Gremillion v. Rapides Parish Police Jury*, 493 So.2d 584 (1986), the supreme court found that plaintiffs could recover only stipulated damages even though defendant had refused to specifically perform the contract, despite a court order to do so.  In its analysis of Louisiana contract law, the court explained that courts look to good faith or bad faith to measure damages.  *Id.* at 587.  An obligor in good faith is liable for foreseeable damages, while an

12

obligor in bad faith is liable for both foreseeable and unforeseeable damages. *Id.* The court then explained that if parties stipulate damages, the "sum stipulated replaces the damages which would have been awarded by the court." *Id.* Thus the court no longer undertakes the good faith/bad faith analysis to determine damages — the stipulated damages clause replaces the court's measurement of damages. *Gremillion* suggests that bad faith does not trump a stipulated damages provision — rather, a stipulated damages provision trumps a finding of bad faith. In that case, defendants were in contempt of court for failing to specifically failure to follow through with a sale. Yet the court limited plaintiffs' recovery to the stipulated $6,600 damages in the contract, instead of the $250,000 awarded by the lower court. Similarly in this case, the Butlers' alleged bad faith should not nullify the stipulated damages provision in the contract.

In *Lombardo v. Deshotel*, 647 So.2d 1086 (La. 1994), the court found that a seller was limited to stipulated damages when her right to specific performance became impracticable. The facts are similar to those in this case. In *Lombardo*, the plaintiff and defendant had signed an agreement to purchase or sell a piece of property. The contract contained a clause that provided that "[i]n the event the purchase fails to comply with this Agreement within the time specified, the seller shall have

13

the right to declare the deposit . . . fortified [sic] . . . or
the seller may demand specific performance." *Id.* at 1089.  When
the date of closing arrived, the defendant refused to purchase
the property.  Plaintiff then filed an action for specific
performance.  The plaintiff later sold the property for $25,000
less than the original purchase price and amended her action to
one for damages.  The trial court awarded plaintiff $25,000 in
damages, finding that plaintiff was released from the stipulated
damages clause since she was required to sell to a third person
to mitigate damages.  *Id.*  Both the court of appeal and the
Louisiana Supreme Court, however, found that plaintiff could
recover only the $1,000 deposit stipulated as damages in the
contract.  *Id.* at 1092.  The supreme court emphasized that the
stipulated damages provisions in the Civil Code were based on the
laissez-faire idea that "parties to a contract should be held to
their agreed estimate of damages no matter what the
circumstances." *Id.* at 1091.  As the basis for the
enforceability of these provisions, the court cited Louisiana
Civil Code article 2012, which provides that a court may not
modify stipulated damages unless the damages are so
disproportionate as to be contrary to public policy.  *Id.*

The *Lombardo* court's focus on the strict application of
stipulated damages provisions is instructive here.  Although
defendant refused to perform the agreement and plaintiff was

14

forced to sell at a lower price, the stipulated damages clause trumped any right plaintiff would have to the difference in the sale price.  Here, the facts are the same.  Defendant refused to perform the agreement and plaintiff ultimately sold the house for less.  Even if defendant acted in bad faith, the Court must strictly enforce the stipulated damages clause.[1]  To do otherwise would undermine the legislative intent that these clauses remain "useful and predictable." *See id*. at 1091.  If the Court found that bad faith nullified a stipulated damages provision, the provisions would lose much of their usefulness. Stipulated damages provisions generally "discourage litigation . . . upon a failure to perform." 6 Saul Litvinoff, Louisiana Civil Law Treatise, § 13.1.  If bad faith voids stipulated damages, parties contractually entitled to stipulated damages could simply allege bad faith and bring contract suits to try to recover more than they have stipulated.  This would undermine the usefulness of stipulated damages clauses.  Parties would be forced to litigate the bad faith issue, which is often fact-specific and difficult to resolve in the early stages of litigation.  As such, parties that originally contracted in such a way as to avoid litigation could become mired in lawsuits over bad faith.

_____

[1]Of course, the court may modify the stipulated damages if they are so manifestly unreasonable as to be contrary to public policy. *See* La. Civ. Code art. 2012.

Parties, of course, are free to condition stipulated damages on good faith — they can easily write this into the contract.

Plaintiffs' reliance on *Bond*, 607 So.2d at 865, is inapposite. *Bond* also concerned a buyer's breach of a purchase agreement to buy a home. Freddie Broadway, the buyer, agreed to purchase the home "as is" from the sellers, the Bonds, but backed out of the agreement one day before the closing because the home had several alleged defects of which he was previously unaware. *Id.* at 866. The Bonds initially sought specific performance but converted the action into one for damages after they sold their home to someone else. *Id.* The court found that Broadway was liable for actual damages, foreseeable or not, under Louisiana Civil Code article 1997 since he acted in bad faith in breaching the purchase agreement. *Id.* at 867. *Bond* does not help plaintiffs, however, because the clause in the purchase agreement at issue was distinguishable. The agreement in *Bond* provided for "specific performance in the event of non-performance by the other party, all costs associated with a default and the award of attorney's fees." *Id.* at 866. In contrast, the Bodins' agreement with the Butlers provided, in the event of the purchaser's breach, for a remedy of either specific performance or the purchaser's forfeiture of the deposit. As such, the Bodins are limited to the relief specified in their agreement.

16

**IV.   CONCLUSION**

For the foregoing reasons, the motion for summary judgment to limit damages to those specified in the provision entitled "Breach of Agreement by Purchaser" is GRANTED.

New Orleans, Louisiana, this <u>24th</u> day of July 2008.

_____

SARAH S. VANCE
UNITED STATES DISTRICT JUDGE