UNITED STATES DISTRICT COURT
                         EASTERN DISTRICT OF LOUISIANA


CHRISTOPHER BODIN AND                          CIVIL ACTION
KYLAN BODIN

VERSUS                                         NO. 07-3505


JAMES C. BUTLER AND                            SECTION "R" (4)
JOCELYN BUTLER


The Court hereby VACATES its prior Order and Reasons dated July 24, 2008 because pages 11 - 16 of the Order were dicta that was unnecessary to the decision and an unnecessary discussion of unresolved state law.  The Court REISSUES the Order with those sections omitted.

## ORDER AND REASONS

Before the Court is defendants' motion for summary judgment to limit damages in this matter to the amount set forth in the Breach of Agreement by Purchaser" provision in the Agreement to Purchase or Sell.  For the following reasons, the Court GRANTS the motion.


I.  BACKGROUND

This case arises out of a contract dispute between plaintiffs, Christopher and Kylan Bodin, and defendants, James and Jocelyn Butler.  Plaintiffs owned two parcels of real property in Covington, La.  A house was located on the first lot, at 318 Twin River Drive.  The second lot (Lot 10) was vacant and

used as a yard.  In October 2005, the Bodins listed the Twin River lot and Lot 10 for sale, with asking prices of $1,175,000 and $145,000 respectively.  On or about May 12, 2006, the Butlers, through their real estate agent, submitted an Agreement to Purchase or Sell, which offered to purchase the Twin River lot for $915,000.  The Bodins rejected the offer on May 14, 2006 and counter-offered to sell the lot for $1,070,000.  The Butlers rejected the counteroffer and on May 22, 2006 submitted another Agreement to Purchase or Sell, offering $965,000.  The Bodins agreed to accept the terms of the May 22, 2006 Agreement to Purchase or Sell ("Agreement") if the purchase price was $980,000, and the Butlers accepted this price.  The Agreement became final on May 23, 2006.  The Butlers tendered a personal check for $5,000 as a deposit.

In accordance with the agreement, the Butlers hired an inspection service, and the service inspected the property on June 1, 2006.  They submitted the results of the inspection to the Bodins, and the Bodins repaired the items the Butlers requested them to fix.  While the repairs were taking place, the Butlers began the process of obtaining financing for the lot.  Before they obtained financing, however, the Butlers decided that they did not wish to purchase the lot.  The parties dispute when the Butlers notified the Bodins of their decision.  The Bodins allege that they did not hear anything from the Butlers, while

the Butlers assert that they promptly notified the Bodins of their decision.  Regardless, on June 30, 2006, the Bodins arrived at the office of Mahoney Title to execute the sale.  The Butlers did not attend, but their real estate agent did.  The Bodins undertook a *proces verbal* to memorialize the proceedings.

The Bodins eventually sold the property, on February 16, 2007, for $900,0000, which was $80,000 less than the price the Butlers agreed to pay.  On June 27, 2007, the Bodins sued the Butlers for breach of the Agreement.  Defendants now move for summary judgment to limit their liability for damages to the amount stipulated in the provision of the Agreement entitled Breach of Agreement by Purchaser.

## II.  LEGAL STANDARD

### A.  Applying Louisiana Law

Because jurisdiction is based on diversity, Louisiana law applies to the substantive issues before the Court.  *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938).  In Louisiana, the sources of law are legislation and custom.  *Shaw Constructors v. ICF Kaiser Eng'rs, Inc.*, 395 F.3d 533, 546 (5th Cir. 2004).  These authoritative or primary sources of law are to be "contrasted with persuasive or secondary sources of law, such as [Louisiana and other civil law] jurisprudence, doctrine, conventional usages, and equity, that may guide the court in

reaching a decision in the absence of legislation and custom." *Id.* (quoting La. Civ. Code art. 1). In Louisiana, "courts must begin every legal analysis by examining primary sources of law: the State's Constitution, codes, and statutes." *Id.* (quoting *Prytania Park Hotel, Ltd. v. Gen. Star Indem. Co.*, 179 F.3d 169, 174 (5th Cir. 1999)). To make an "*Erie* guess" on an issue of Louisiana law, the Court must "employ the appropriate Louisiana methodology" to decide the issue the way that it believes the Supreme Court of Louisiana would decide it. *Id.* (quoting *Lake Charles Diesel, Inc. v. Gen. Motors Corp.*, 328 F.3d 192, 197 (5th Cir. 2003)).

  **B.** **Summary Judgment**

  Summary judgment is appropriate when there are no genuine issues as to any material facts, and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986). A court must be satisfied that no reasonable trier of fact could find for the nonmoving party or, in other words, "that the evidence favoring the nonmoving party is insufficient to enable a reasonable jury to return a verdict in her favor." *Lavespere v. Niagara Mach. & Tool Works, Inc.,* 910 F.2d 167, 178 (5th Cir.1990) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986)). The moving party bears the burden of establishing that there are no genuine issues of material fact.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record contains insufficient proof concerning an essential element of the nonmoving party's claim. *See Celotex,* 477 U.S. at 325; *Lavespere,* 910 F.2d at 178.  The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See Celotex,* 477 U.S. at 324.  The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue exists for trial. *See id.* at 325; *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994)

**III. DISCUSSION**

   **A.   Stipulated Damages**

Plaintiffs allege that defendants breached a provision of the Agreement entitled "Financing."  The provision provides:

> PURCHASER'S failure to apply for said loan(s), to reasonably produce all documents required by Lender and diligently pursue loan approval or to have the stated down-payment shall not void this agreement, but be considered in breach hereof.

(R. Doc. 14-2 at 1).  At issue here is whether the damages the plaintiffs incurred when defendants allegedly breached the Agreement are limited to the amount specified in the contract

5

provision entitled "Breach of Agreement by Purchaser."  The provision provides:

> In the event the PURCHASER fails to comply with this agreement within the time specified, SELLER shall have the right to demand specific performances or, at SELLER's option, SELLER shall have the right to reoffer the property for sale and may declare the deposit, ipso facto, forfeited, without formality beyond tender of title to PURCHASER.  In either event, SELLER shall have the right to recover any costs and/or fees, including expenses and reasonable attorney's fees, incurred as a result of this agreement and breach thereof.

(R. Doc. 14-2 at 2).  The Butlers argue that since the purchase agreement provides two alternatives in the event of breach — the purchaser's forfeiture of the deposit or specific performance — the Bodins cannot obtain relief other than as provided in the stipulations.  The Bodins claim that since the deposit was not earnest money, they can recover more than the deposit.

Under Louisiana law, "[w]hen the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." La. Civ. Code art. 2046.  Parties may stipulate the damages to be recovered in the event of "nonperformance, defective performance, or delay in performance of an obligation."  La. Civ. Code art. 2005.  A stipulated damage clause fixes the amount of damages that can be recovered, and a court may not award actual damages. *Grimsley v.* Lenox, 643 So.2d 203, 206 (La. Ct. App. 1994).  A

6

court may not modify the stipulated damages in a contract unless the damages are so "manifestly unreasonable" as to be contrary to public policy.  La. Civ. Code art. 2012.

Here, the words of the Agreement are clear.  If the purchaser breaches, the seller can either demand specific performance or put the property back on the market and declare the deposit forfeited.  With either choice, the seller can also recover costs and/or fees, including expenses and reasonable attorney's fees.  Since the Bodins chose not to demand specific performance but to sell the property to someone else, they are entitled to keep the deposit and recover costs and/or fees.

Plaintiffs mistakenly contend that since the Butlers' deposit was not "earnest money" under Louisiana law, they can recover the actual damages they incurred because of the breach. Under Louisiana law, when parties to a contract to sell stipulate that a sum given by the buyer to the seller is earnest money, either party may recede from the contract.  If the buyer recedes, she forfeits the earnest money; if the seller recedes, he must return the earnest money plus an equal amount.  La. Civ. Code art. 2624.  A deposit, in contrast, is defined simply as a sum given by the buyer to the seller in connection with a contract for sale. *Id.*  As plaintiffs point out, article 2624 abandons the earlier presumption that unless stipulated otherwise, any money a buyer gives to a seller in contemplation of purchase is earnest

money.  *See* Revision Comments, 1993, La. Civ. Code art. 2624. Indeed, the $5,000 deposit the Butlers tendered to the Bodins is not earnest money since the Agreement also provides for a right of specific performance in the event of default, thus not allowing the purchaser to recede merely by forfeiting the deposit.  *See Mason v. Coen*, 449 So.2d 1195, 1199 (La. Ct. App. 1984).  But even so, the plaintiffs cannot recover in excess of the deposit, plus costs and attorney's fees, when the Agreement explicitly provides that the two remedies for a purchaser's breach are specific performance or purchaser's forfeiture of the deposit, plus payment of costs and attorney's fees.  *See Riverfront Investors Group v. Chavez*, 644 So.2d 247, 250 (La. Ct. App. 1994) (finding that even though statute governing earnest money did not apply, liquidated damages provision of agreement limited purchaser's liability to deposit amount).  *Grimsley v. Lenox* is particularly analogous.  There, the relevant provision stated:

> In the event purchaser fails to perform every condition of this contract within the time specified, [they] waive any right to the deposit, and forfeit same as liquidated damages without formal demand, or the seller may demand specific performance.

643 So.2d 203, 204 (La. Ct. App. 1994).  The agreement also stipulated that the non-breaching party could recover attorney's fees.  The court reversed the trial court's finding that the seller could recover actual damages from the purchaser's breach

8

and found that this provision, although not earnest money, limited the seller's recovery to the amount of the deposit or specific performance. *Id.* at 206.  Similarly, the agreement here expressly provides that if the purchaser fails to perform, the seller can either demand specific performance or keep the purchaser's deposit.  Thus, even though the $5,000 was not earnest money, the provision of the Agreement in question limits the seller's recovery to $5,000, plus costs and/or fees.

    **B.    Bad faith**

Plaintiffs also contend that summary judgment is not appropriate since there is a genuine issue of material fact as to whether defendants acted in bad faith, and thus whether they are entitled to recover more than the stipulated damages.  Under Louisiana law, an obligor who breaches a contract in good faith is liable for damages that were foreseeable at the time the contract was made.  La. Civ. Code art. 1996.  An obligor who breaches a contract in bad faith is liable for all damages, foreseeable or not, that are a result of his failure to perform.  La. Civ. Code art. 1997.  Bad faith generally implies "actual or constructive fraud or a refusal to fulfill contractual obligations, not an honest mistake as to actual rights or duties."  *Dorsett v. Johnson*, 786 So.2d 897, 900-01 (La. Ct. App. 2001) (internal citations omitted).  The obligor must have "intentionally and maliciously" failed to perform his obligation.

*Id.* at 901. Bad faith means more than "mere bad judgment or negligence" — it implies a conscious doing of wrong for dishonest or morally questionable reasons. *Bond v. Broadway*, 607 So.2d 865, 867 (La. Ct. App. 1992).

Pretermitting the legal question of whether the stipulated damages clause still applies if there is a bad faith breach of contract, the Court finds that the evidence submitted does not show that the Butlers' actions rise to the level of bad faith that makes an obligor liable for all damages, foreseeable or not. *Cf. Hollenbach v. Holden*, 728 So.2d 544, 549-50 (La. Ct. App. 1999) (finding contractor was in bad faith when, after an oil spill, contractor abandoned the contract to remove oil tanks and did not take steps to contain the spill or inform the plaintiffs of the leak); *Kite v. Gus Kaplan, Inc.*, 708 So.2d 473, 482 (La. Ct. App. 1998), *aff'd in part, reversed in part on other grounds* 747 So.2d 503 (La. 1999) (finding that landlord's forcible eviction of tenant, in breach of their lease, without warning and in a callous manner with no regard to tenant's property constitutes bad faith). The Bodins argue that the Butlers' "arbitrary and capricious" refusal to go through with the sale was in bad faith. The Bodins have provided no evidence of the Butlers' bad faith other than the bare fact that they refused to go through with the Agreement. Without evidence that the Butlers' default was malicious or fraudulent in some manner, the

10

Bodins cannot survive summary judgment as to bad faith based on the Butlers' mere refusal to perform. Further, the Agreement contemplated the situation in which the purchaser could fail to follow through with the contract. The purchaser's failure to diligently pursue loan approval or present the down-payment would be a breach of the Agreement, (R. Doc. 14-2 at 1), and the parties specified the remedy therefor. (R. Doc. 14-2 at 2). If the Court were to hold that by not seeking financing or putting up a down-payment, the party also violated the bad faith provision in the Civil Code, any breach of this common contractual provision would allow the seller to recover unforeseeable damages. The Court finds that article 1997 should not be construed so broadly as to include such intentional, but not malicious, conduct. As such, without evidence of malice or morally questionable motivation, a purchaser's failure to diligently pursue loan approval or produce a down-payment does not constitute the bad faith requisite to allow the seller to recover all damages, including those that are unforeseeable

**IV.   CONCLUSION**

For the foregoing reasons, the motion for summary judgment to limit damages to those specified in the provision entitled "Breach of Agreement by Purchaser" is GRANTED.

New Orleans, Louisiana, this <u>28th</u> day of July 2008.

_____<u>Sarah Vance</u>_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE