UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

CHRISTOPHER BODIN AND KYLAN                    CIVIL ACTION
BODIN

VERSUS                                         NO: 07-3505

JAMES C. BUTLER AND JOCELYN                    SECTION: R(4)
BUTLER

**ORDER AND REASONS**

Before the Court is plaintiffs' Motion to Fix Award of
Costs, Fees, Expenses, and Attorney's Fees.  For the following
reasons, the Court finds that plaintiffs may recover court costs
and attorney's fees.

**I.   Background**

This case arises out of a contract dispute between
plaintiffs, Christopher and Kylan Bodin, and defendants, James
and Jocelyn Butler.  Plaintiffs owned two parcels of real
property in Covington, La.  A house was located on the first lot,
at 318 Twin River Drive.  The second lot (Lot 10) was vacant and

used as a yard.  In October 2005, the Bodins listed the Twin River lot and Lot 10 for sale, with asking prices of $1,175,000 and $145,000 respectively.  On or about May 12, 2006, the Butlers, through their real estate agent, submitted an Agreement to Purchase or Sell, which offered to purchase the Twin River lot for $915,000.  The Bodins rejected the offer on May 14, 2006 and counter-offered to sell the lot for $1,070,000.  The Butlers rejected the counteroffer and on May 22, 2006 submitted another Agreement to Purchase or Sell, offering $965,000.  The Bodins agreed to accept the terms of the May 22, 2006 Agreement to Purchase or Sell ("Agreement"), if the purchase price was $980,000, and the Butlers accepted this price.  The Agreement became final on May 23, 2006.  The Butlers tendered a personal check for $5,000 as a deposit.

In accordance with the agreement, the Butlers hired an inspection service, and the service inspected the property on June 1, 2006.  They submitted the results of the inspection to the Bodins, and the Bodins repaired the items the Butlers requested them to fix.  While the repairs were taking place, the Butlers began the process of obtaining financing for the lot. Before they obtained financing, however, the Butlers decided that they did not wish to purchase the lot.  The parties dispute when the Butlers notified the Bodins of their decision.  The Bodins

2

allege that they did not hear anything from the Butlers, while the Butlers assert that they promptly notified the Bodins of their decision.  Regardless, on June 30, 2006, the Bodins arrived at the office of Mahoney Title to execute the sale.  The Butlers did not attend, but their real estate agent did.  The Bodins did a *proces verbal* to memorialize the proceedings.

The Bodins eventually sold the property, on February 16, 2007, for $900,0000, which was $80,000 less than the price the Butlers agreed to pay.  On June 27, 2007, the Bodins sued the Butlers for breach of the Agreement.  Neither party contests that the Butlers breached the Agreement.  Defendants moved for summary judgment to limit their liability for damages to the amount stipulated in the provision of the Agreement entitled "Breach of Agreement by Purchaser."  That provision permits the seller, upon the purchaser's breach, to demand specific performance or forfeiture of the deposit. (R. Doc. 14-2).  The provision further states that the seller "shall have the right to recover any costs and/or fees, including expenses and reasonable attorney's fees, incurred as a result of this agreement or breach thereof."  The Court granted defendants' motion, thus limiting defendants' liability to the $5,000 deposit and costs and/or fees. (R. Doc. 36).  After the Court's ruling, the parties attended a pre-trial conference with the Court.  The parties agreed that the only

3

remaining issue was the amount of costs, expenses, and attorney's fees owed to plaintiffs.  Since the case was set for a bench trial, the Court instructed both parties to submit briefs on the amount of costs, fees, and expenses that plaintiffs may recover. The Court has reviewed the briefs and rules as follows.

## II.  Discussion

### A.   Applying Louisiana law

Because jurisdiction is based on diversity of citizenship, Louisiana law applies to the substantive issues before the Court. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938).  In Louisiana, the sources of law are legislation and custom. *Shaw Constructors v. ICF Kaiser Eng'rs, Inc.*, 395 F.3d 533, 546 (5th Cir. 2004).  These authoritative or primary sources of law are to be "contrasted with persuasive or secondary sources of law, such as [Louisiana and other civil law] jurisprudence, doctrine, conventional usages, and equity, that may guide the court in reaching a decision in the absence of legislation and custom." *Id.* (quoting La. Civ. Code art. 1).  In Louisiana, "courts must begin every legal analysis by examining primary sources of law: the State's Constitution, codes, and statutes." *Id.* (quoting *Prytania Park Hotel, Ltd. v. Gen. Star Indem. Co.*, 179 F.3d 169,

174 (5th Cir. 1999)).  To make an "*Erie* guess" on an issue of
Louisiana law, the Court must "employ the appropriate Louisiana
methodology" to decide the issue the way that it believes the
Supreme Court of Louisiana would decide it. *Id.* (quoting *Lake
Charles Diesel, Inc. v. Gen. Motors Corp.*, 328 F.3d 192, 197 (5th
Cir. 2003)).

    **B.   Costs and expenses**

    Under Louisiana law, "[w]hen the words of a contract are
clear and explicit and lead to no absurd consequences, no further
interpretation may be made in search of the parties' intent."
La. Civ. Code art. 2046.  The words of a contract are interpreted
in accordance with their "plain, ordinary, and popular" meaning
of the language used and by construing the entirety of the
document on a practical, reasonable, and fair basis. *Naquin v.
Louisiana Power & Light Co.*, 943 So.2d 1156, 1161 (La. Ct. App.
2006) (citing *Belle Pass Terminal, Inc. v. Jolin, Inc.*, 634 So.2d
466, 480 (La. Ct. App. 1994)); La. Civ. Code. art. 2047.  Words
susceptible of different meanings are interpreted in accordance
with the meaning that "best conforms to the object of the
contract." La. Civ. Code art. 2048.

    The provision of the Agreement entitled Breach of Agreement
by Purchaser provides:

    In the event PURCHASER fails to comply with this

5

> agreement within the time specified, SELLER shall have
> the right to demand specific performances or, at
> SELLER's option, SELLER shall have the right to reoffer
> the property for sale and may declare the deposit, ipso
> facto, forfeited, without formality beyond tender of
> title to PURCHASER.  In either event, SELLER shall have
> the right to recover any costs and/or fees, including
> expenses and reasonable attorney's fees, incurred as a
> result of this agreement or breach thereof.

(R. Doc. 14-2, Agreement at 2).  Plaintiffs claim that this provision allows them to recover all expenses they incurred in the 231 days between the date the defendants should have taken title and the day the house finally sold.  Specifically, plaintiffs allege that defendants should have to pay them for the payments on their mortgage note, flood insurance payments, homeowner's association dues, utility payments, repair costs, landscaping charges, termite inspection, and lawn sprinkler — a total of $59,031.01.  Defendants contend that the only costs and fees recoverable by plaintiffs are court costs and litigation expenses.

The Court first notes that much of plaintiffs' arguments are an attempt to rehash the Court's prior decision on summary judgment.  Specifically, plaintiffs claim that the Court's characterization of the $5,000 deposit as stipulated damages "leads to an anomalous and inequitable apportionment of harms." Plaintiffs fail to note, however, that in the event of their own breach, they would have been similarly liable for either $5,000

6

or specific performance. (R. Doc. 14-2).  Given the reciprocal nature of the arrangement, the Court finds the result neither anomalous nor inequitable.

The Court will now consider the meaning of "costs" under Louisiana law.  Louisiana courts have interpreted language referring to costs and fees in purchase agreements as meaning the costs and fees associated with enforcing their contract rights through litigation. *See Doskey v. McKinnon*, 492 So.2d 1239, 1242 (La. Ct. App. 1986); *duTreil v. Wohlert*, 210 So.2d 511, 514 (La. Ct. App. 1968); *Terry v. Richmond*, 314 So.2d 375, 378 (La. Ct. App. 1975).  For instance, in *duTreil*, the Louisiana Court of Appeal for the First Circuit held that a broadly worded contract term providing for "all costs and reasonable attorney's fees incurred by Purchaser," was limited to costs "incurred in the filing and prosecution of [the] suit." 210 So.2d at 514.  There, defendant breached an agreement to sell plaintiff a certain parcel of land unencumbered. *Id.* at 511.  The agreement provided that if the seller breached the agreement, the purchaser could either receive specific performance or the deposit, plus an equal amount, as liquidated damages, as well as "all costs and reasonable attorney's fees incurred by Purchaser." *Id.* at 512. The court found that "costs" did not include the fee for a title examination. *Id.* at 514.  The court explained that the expense

7

for the title examination was not a cost, but rather an element of damage suffered by the plaintiff. *Id.* Since the liquidated damages clause fixed the amount of damages plaintiff could recover, plaintiff was not entitled to recover the cost of the title examination in addition to that amount. *Id.*

Similarly here, the Court finds that plaintiffs' recovery under the "costs and/or fees" provision is limited to court costs, litigation expenses, and attorney's fees.  In its previous Order granting summary judgment for defendants, the Court held that since plaintiffs had not sought specific performance and instead had elected to remarket their property, the contract limited plaintiffs' damages to the amount of defendants' deposit. If the Court now allowed plaintiffs to recover payments on their mortgage note and utility bills, the Court would effectively undermine its earlier decision limiting plaintiffs' recoverable damages to the deposit.  Plaintiffs cannot recover more than the stipulated damages by recharacterizing damages as "costs."  The Court thus finds that plaintiffs' claimed expenses for their mortgage note, flood insurance payments, homeowner's association dues, utility payments, repair costs, landscaping charges, lawn sprinkler and termite inspection — totaling $59,391.59 — are not recoverable as costs and/or expenses.

The Court further notes that even if the claimed expenses

8

were considered costs, plaintiffs failed to list the documents supporting the claimed expenses as exhibits on their exhibit list. (*See* R. Doc. 11).  The Court's scheduling order mandated that all exhibits to be used at trial shall be filed in the record no later than May 26, 2008. (R. Doc. 9).  The scheduling order further provided that:

> The Court will not permit any witness, expert or fact, to testify or any exhibits to be used unless there has been compliance with this Order as it pertains to the witness and/or exhibits, without an order to do so issued on motion for good cause shown.

(R. Doc. 9).  Plaintiffs filed an exhibit list, but the list did not include any of the documents filed herein other than the termite certificate. (R. Doc. 11).  Plaintiffs also have not filed a motion to allow the exhibits for "good cause." Accordingly, pursuant to the scheduling order, the Court finds that the documents cannot be used as evidence to prove plaintiffs' claimed costs.

Plaintiffs' only evidence of litigation-related costs are the invoices from plaintiffs' counsel for his services.  The invoices include a $139.80 charge for the court reporter for the *proces verbal*, a $350.00 charge for a filing fee, and a $400.00 charge in connection with a deposition.  Accordingly, the Court finds that plaintiffs are entitled to $889.80 in court costs.

**C.   Attorney's fees**

The Fifth Circuit has held that when state law provides the
rule of decision for the substantive issues in a case, state law
controls both the award of and the reasonableness of attorney's
fees. *See Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir.
2002).  Defendants contend that plaintiffs cannot recover
attorney's fees since plaintiffs could have retained the deposit
without filing suit.  Defendants rely on *Grimsley v. Lenox*, 643
So.2d 203 (La. Ct. App. 1994), for their contention.  In
*Grimsley*, plaintiff, brought an action to enforce a specific
performance provision of a real estate purchase agreement against
the purchasers. *Id.*  Because specific performance of the
agreement was impossible, the trial court ordered the defendant
purchasers to pay the plaintiff actual damages, even though the
contract provided for liquidated damages in the amount of $500.
The Louisiana Court of Appeal for the Third Circuit reversed and
held that the purchasers had to pay plaintiff only the $500
stipulated as damages in the contract. *Id.* at 206.  The court
also found that the plaintiff could not recover attorney's fees,
despite a clause in the agreement providing that the non-
breaching party could recover "reasonable attorney's fees and
court costs incurred in enforcing collection." *Id.* at 204.  The
court explained that since the agreement provided that if the

10

purchasers breached, the deposit would be forfeited "without formal demand," plaintiff did not have to sue the purchasers for the $500 deposit. *Id.* at 206.  Since plaintiff's lawsuit was unnecessary, plaintiff was not entitled to any attorney's fees. *Id.*

Defendants argue that like the plaintiff in *Grimsley*, plaintiffs could have kept the deposit without filing a lawsuit, since the Agreement provides that if the purchaser defaults, the seller "may declare the deposit, ipso facto, forfeited, without formality beyond tender of title to PURCHASER." (R. Doc. 14-2, Agreement at 2).  Defendants argue an award of attorney's fees is thus inappropriate despite the provision in the Agreement allowing the seller to recover "reasonable attorney's fees, incurred as a result of this agreement or breach thereof." (R. Doc. 14-2, Agreement at 2).

The Court finds that *Grimsley* is distinguishable.  Like the contract there, the Agreement here provides that plaintiffs are entitled to the deposit without "formality beyond tender of title" in the event of the buyers' breach.  In *Grimsley*, the purchasers deposited the $500 deposit with the seller's real estate agent.  But here, while the record reflects that title was tendered to the defendants through the *proces verbal*, there is no evidence that defendants tendered the deposit to plaintiffs at

11

that time.  Further, plaintiffs' complaint listed the deposit as part of the damages owed (Complaint at ¶29(m)), and defendants' answer denied that plaintiffs were owed such damages. (Answer at ¶29).  The record thus reflects that, unlike *Grimsley*, the lawsuit here was necessary to recover the deposit.  As such, *Grimsley* does not foreclose an award of reasonable attorney's fees in connection with this lawsuit.

An accepted method with which to begin a calculation of a fee award under Louisiana law is to multiply the hours worked by an hourly rate the Court deems to be reasonable. *See Fourchon Docks, Inc. v. Milchem Inc.*, 849 F.2d 1561, 1568 (5th Cir. 1988). Courts consider ten factors in determining the reasonableness of attorney's fees. *State v. Williamson*, 597 So.2d 439, 442 (La. 1992).  The court considers: (1) the ultimate result obtained; (2) the responsibility incurred; (3) the importance of the litigation; (4) the amount of money involved; (5) the extent and character of the work performed; (6) the legal knowledge, attainment and skill of the attorneys; (7) the number of appearances made; (8) the intricacies of the facts involved; (9) the diligence and skill of counsel; and (10) the court's own knowledge. *Id.; Rivet v. Dep't of Trans. and Dev.*, 800 So.2d 777,

780 n.3 (La. 2001).[1]  These factors are derived from Rule 1.5(a) of the Rules of Professional Conduct. *Williamson*, 597 So.2d at 442 n.9.

Plaintiffs' counsel submitted detailed descriptions of the hours incurred in the representation of plaintiffs.  These descriptions, in the form of invoices submitted to plaintiffs for services rendered, include a list of the tasks performed by plaintiffs' attorney and the amount of time expended to accomplish each task.  The Court finds that the billing rate of $200 per hour for the attorney, a solo practitioner, to be a reasonable rate for the services involved.  Multiplying counsel's hourly rate by the number of hours devoted to enforcing plaintiffs' rights as a result of defendants' breach would result in an award of $15,936.  But because plaintiffs' claims for damages in addition to the deposit were unsuccessful, the Court finds that the award should be discounted by 20%, resulting in an award of $12,748.80.

**III. Conclusion**

For the foregoing reasons, the Court finds that plaintiffs

---

[1]These guidelines are permissive and consideration of all of them is not necessary. *Fourchon Docks, Inc. v. Milchem Inc.*, 849 F.2d 1561, 1568 (5th Cir. 1988).

may recover court costs and reasonable attorney's fees.  The
Court ORDERS defendants to pay plaintiffs $889.80 in court costs
and $12,748.80 in attorney's fees.


New Orleans, Louisiana, this <u>9th</u> day of December, 2008

_____
             SARAH S. VANCE
      UNITED STATES DISTRICT JUDGE

14